**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRANDON RUDOLPH KIMBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No. 22 CV 02717** |
| vs. | ) | |
| | ) | |
| ROUNDY'S ILLINOIS, LLC | ) | **Hon. Mary M. Rowland** |
| d/b/a MARIANO'S, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Roundy's Illinois, LLC d/b/a Mariano's ("Defendant," "Mariano's," or the "Company"), through its undersigned counsel, and pursuant to Local Rules 56.1(a)(1) and 56.1(g), respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment.

COUNSEL FOR DEFENDANT,

ROUNDY'S ILLINOIS, LLC
d/b/a MARIANO'S:

Christopher S. Griesmeyer (ARDC No. 6269851)
GREIMAN, ROME & GRIESMEYER, LLC
205 West Randolph Street, Suite 2300
Chicago, Illinois 60606
Telephone: (312) 428-2750
Facsimile: (312) 332-2781
cgriesmeyer@grglegal.com

**TABLE OF CONTENTS**

I. Undisputed Material Facts ........................................................................................... 1

II. Legal Standard for Summary Judgment ........................................................................ 1

III. Argument ...................................................................................................................... 3

    A. Plaintiff's "Discrimination" Claim Fails as a Matter of Law ................................... 3

        1. Plaintiff Cannot State a Prima Facie Case of Discrimination ........................ 4

           a. Plaintiff's failed criminal background check rendered him
              unqualified to remain employed at Mariano's ........................................ 4

           b. Plaintiff cannot identify any similarly-situated comparators. .................... 6

        2. Mariano's Legitimate, Non-Discriminatory Reason ...................................... 8

        3. There is NO Evidence of "Pretext" ............................................................... 9

    B. Plaintiff's "Hostile Work Environment" Claim Fails ............................................. 11

        1. The Allegedly Harassing Conduct was Neither "Severe" nor "Pervasive" ............... 11

           a. The single lewd comment (overheard by Plaintiff, which he
              ascribes to Crystal Brandon) was neither severe nor pervasive. .............................. 12

           b. Non-specific "gossip" about Plaintiff's national origin cannot sustain
              a "hostile work environment" claim under § 1981 ................................... 14

        2. There is No Basis to Impose Liability on Mariano's. .................................. 14

           a. Mariano's exercised reasonable care to prevent (and promptly correct)
              any workplace discrimination and harassment ........................................ 15

           b. Plaintiff unreasonably failed to take advantage of the multiple preventative
              and corrective opportunities provided by Mariano's ................................ 17

    C. Plaintiff's "Retaliation" Claim Fails as a Matter of Law ...................................... 18

        1. Plaintiff Did Not Engage in "Protected Activity" ...................................... 19

        2. There was No "Causal Nexus" between Plaintiff's (Alleged) Promotion Request and
           the Termination of his Employment ............................................................ 19

V. Conclusion ................................................................................................................ 20

Certificate of Service .................................................................................................... 22

TABLE OF AUTHORITIES

**Statutes**

42 U.S.C. § 1981 ................................................................................................................ 3

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................................... 1

**Cases**

*Alamo v. Bliss*, 864 F.3d 541 (7th Cir. 2017) ................................................................ 12

*Alley v. Penguin Random House,* 62 F.4th 358 (7th Cir. 2023) .................................... 19

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ............................................... 1, 2

*Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866 (7th Cir. 2016) ............... 3

*Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d (7th Cir. 2003) ............... 2

*Bellaver v. Quanex Corp.*, 200 F.3d 485 (7th Cir. 2000) ............................................... 4

*Bennett v. Roberts*, 295 F.3d 687 (7th Cir. 2002) .......................................................... 3

*Boss v. Castro,* 816 F.3d 910 (7th Cir. 2016) ................................................................. 9

*Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176 (7th Cir. 1993) ................... 2

*Bunn v. Khoury Enterprises, Inc.,* 753 F.3d 676 (7th Cir. 2014)..................................... 8

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) ................................... 15, 18

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) .......................................................... 1, 2

*Cole v. Board of Trustees of Northern Illinois University,* 838 F.3d 888 (7th Cir. 2016)............ 11

*Comcast Corp. v. National Association of African American-Owned Media,* 140 S. Ct. 1009 (2020) ................................................................................................................... 4

*Dandy v. United Parcel Serv., Inc.,* 388 F.3d 263 (7th Cir. 2004) ................................ 13

*David v. Board of Trustees of Community College Dist. No. 508*, 846 F.3d 216 (7th Cir. 2017)... 7

*Demkovich v. St. Andrew the Apostle Parish,* 973 F.3d 718 (7th Cir. 2020)................................ 11

*Dey v. Colt Const. & Dev. Co.,* 28 F.3d 1446 (7th Cir. 1994)...................................... 20

*Diaz v. Kraft Foods Global, Inc.,* 653 F.3d 582 (7th Cir. 2011) ...................................................... 6

*Durkin vs. City of Chicago*, 341 F.3d 606 (7th Cir. 2003) ........................................................ 17

*Ellis v. CCA of Tennessee LLC*, 650 F.3d 640 (7th Cir. 2011) ........................................................ 13

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ...................................................... 15

*Finnane v. Pentel of America, Ltd.,* 2000 WL 288437 (N.D. Ill. Mar. 14, 2000) ....................... 14

*Flores v. Preferred Tech. Grp.,* 182 F.3d 512 (7th Cir. 1999) ........................................................ 8

*Gonzalez v. Ingersoll Milling Mach. Co.,* 133 F.3d 1025 (7th Cir. 1998) ...................................... 3

*Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651 (7th Cir. 2010) ............................................... 2

*Grayson v. O'Neill,* 308 F.3d 808 (7th Cir. 2002) .......................................................... 9

*Hague v. Thompson Distribution Co.,* 436 F.3d 816 (7th Cir. 2006) ......................................... 3, 8

*Hampton v. Ford Motor Co.,* 561 F.3d 709 (7th Cir. 2009) ...................................................... 1

*Harper v. C.R. England, Inc.,* 687 F.3d 297 (7th Cir. 2012) ...................................................... 1

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17,(1993)................................................................. 11

*Hill v. American General Finance, Inc.,* 218 F.3d 643 (7th Circ. 2000)............................... 16, 18

*Humphries v. CBOCS West, Inc.,* 474 F.3d 387 (7th Cir. 2007) ................................................ 18

*Hutt v. AbbVie Prod. LLC*, 757 F.3d 687 (7th Cir. 2014) ........................................................ 6

*Jansen v. Packaging Corp. of Am.,* 123 F.3d 490 (7th Cir.1997).............................................. 14

*Johnson v. Nordstrom, Inc.*, 260 F.3d 727 (7th Cir. 2001) ...................................................... 10

*Jones v. Union Pac. R. Co.,* 302 F.3d 735 (7th Cir. 2002) ...................................................... 8

*Jordan v. Summers,* 205 F.3d 337 (7th Cir. 2000)............................................................... 10

*Kilgore v. FedEx Freight*, 458 F. Supp. 3d 973 (N.D. Ill. 2020)............................................... 4

*Lauth v. Covance, Inc.*, 863 F.3d 708 (7th Cir. 2017) ...................................................... 6

*Lewis v. Wilkie,* 909 F.3d 858 (7th Cir. 2018) .......................................................... 18

*Life Plans, Inc. v. Security Life of Denver Ins. Co.,* 800 F.3d 343 (7th Cir. 2015) ...................... 2

*Luckie v. Ameritech Corp.,* 389 F.3d 708 (7th Cir. 2004) ...................................................... 19

*Luster v. Ill. Dep't of Corrs.,* 652 F.3d 726 (7th Cir. 2011) ............................................................ 4

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ...................................................... 3, 9

*McGowan v. Deere & Co.,* 581 F.3d 575 (7th Cir. 2009) ...................................................... 6

*McPherson v. City of Waukegan,* 379 F.3d 430 (7th Cir. 2004) ....................................... 15, 16, 18

*Mercer v. Cook Cty., Ill.,* 527 F. App'x 515 (7th Cir. 2013) ............................................ 13

*Miller v. American Family Mutual Insurance Co.,* 203 F.3d 997 (7th Cir. 2000) ........................ 20

*Miller v. Gonzalez,* 761 F.3d 822 (7th Cir. 2014) ......................................................... 3

*Mills v. First Fed. Sav. & Loan Ass'n of Belvidere,* 83 F.3d 833 (7th Cir. 1996) ......................... 9

*Moriarty v. Dyson, Inc.,* 2012 WL 5389684 (N.D. Ill. Oct. 30, 2012) ..................................... 14

*Murray v. Chicago Transit Authority,* 252 F.3d 880 (7th Cir. 2001) ...................................... 9

*Nichols v. Mich. City Plant Planning Department,* 755 F.3d 594 (7th Cir. 2014) ........................ 13

*Northington v. H & M International,* 712 F.3d 1062 (7th Cir. 2013) ...................................... 19

*Oliver v. Joint Logistics Managers, Inc.,* 893 F.3d 408 (7th Cir. 2018) .............................. 3, 4, 8

*Omnicare, Inc. v. UnitedHealth Grp., Inc.,* 629 F.3d 697 (7th Cir. 2011) ................................ 1

*Ortiz v. Werner Enters., Inc.,* 834 F.3d 760 (7th Cir. 2016) .............................................. 3

*Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027 (7th Cir. 1998) .............................. 17

*Paschall v. Tube Processing Corp.,* 28 F.4th 805 (7th Cir. 2022) ..................................... 9, 11

*Passananti v. Cook County,* 689 F.3d 655 (7th Cir. 2012) ............................................... 13

*Patt v. Family Health Sys., Inc.,* 280 F.3d 749 (7th Cir. 2002) ........................................ 14

*Perry v. Harris Chernin, Inc.,* 126 F.3d 1010 (7th Cir.1997) .......................................... 17

*Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535 (7th Cir. 2002) ................................ 13

*Pilditch v. Board of Educ.,* 3 F.3d 1113 (7th Cir. 1993) ................................................ 8

*Porter v. City of Chicago,* 700 F.3d 944 (7th Cir. 2012) ................................................. 2

*Postal Service Board of Governors v. Aikens,* 460 U.S. 711 (1983) ................................... 4

*Salas v. Wisconsin Department of Corrections,* 493 F.3d 913 (7th Cir. 2007) ............................ 20

*Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526 (7th Cir. 1993) ........................................................ 13

*Saxton v. Wolf*, 508 F. Supp. 3d 299 (N.D. Ill. 2020) ................................................................. 12

*Scott v. Harris*, 550 U.S. 372 (2007) ....................................................................................... 1

*Scruggs v. Garst Seed Co.*, 587 F.3d 832 (7th Cir. 2009) ........................................................ 14

*Shaw v. AutoZone, Inc.*, 180 F.3d 806 (7th Cir.1999) ..................................................... 15, 16, 18

*Smith v. Chicago Transit Auth.*, 806 F.3d 900 (7th Cir. 2015) .................................................. 10

*Stahl v. St. Anthony Medical Center of Crown Point, Inc.*, 103 Fed. App'x. 13 (7th Cir. 2004) .... 6

*Stephens v. Erickson*, 569 F.3d 779 (7th Cir. 2009) ................................................................ 18

*Stewart v. Henderson*, 207 F.3d 374 (7th Cir.2000) ................................................................ 10

*Sweatt v. Union Pac. R. Co.*, 796 F.3d 701 (7th Cir. 2015) ....................................................... 10

*Swyear v. Fare Foods Corp.*, 911 F.3d 874 (7th Cir. 2018) ...................................................... 12

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981) ........................................... 4

*Tomanovich v. City of Indianapolis*, 457 F.3d 656 (7th Cir. 2006) ...................................... 19, 20

*Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) .................................................. 20

*Vance v. Ball State Univ.*, 570 U.S. 421 (2013) ....................................................................... 15

*Vance v. Ball State Univ.*, 646 F.3d 461 (7th Cir. 2011) ............................................................ 11

*Wheeler v. Lawson*, 539 F.3d 629 (7th Cir. 2008) ..................................................................... 2

*Yancick v. Hanna Steel Corp.*, 653 F.3d 532 (7th Cir. 2011) ................................................ 9, 11

*Zegarra v. John Crane, Inc.*, 218 F. Supp. 3d 655 (N.D. Ill. 2016) ........................................... 13

## I. UNDISPUTED MATERIAL FACTS

Pursuant to Fed. R. Civ. P. 56(c)(1) and Local Rule 56(a)(3), Mariano's respectfully submits and incorporates its Separate Statement of Undisputed Facts ("SSUF").

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

The standards for granting summary judgment are well settled. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law." *Hampton v. Ford Motor Co.,* 561 F.3d 709, 713 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

When determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Id.* at 255. However, "district courts are not required to draw every requested inference; they must only draw reasonable ones that are supported by the record." *Omnicare, Inc. v. UnitedHealth Grp., Inc.,* 629 F.3d 697, 704 (7th Cir. 2011). Thus, while the Court construes facts in favor of the nonmoving party on summary judgement, that favor "does not extend to drawing inferences that are supported by only speculation or conjecture." *Harper v. C.R. England, Inc.,* 687 F.3d 297, 306 (7th Cir. 2012) (citation and internal alterations and quotation marks omitted). Moreover, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party has the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A defendant's summary

judgment burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.*, at 325; *see also, Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1183 (7th Cir. 1993) (on summary judgment, moving party "can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof.").

Once the moving party has met this burden, the nonmoving party "must come forward with specific facts demonstrating that there is a genuine issue for trial." *Wheeler v. Lawson,* 539 F.3d 629, 634 (7th Cir. 2008). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Id.* (citing *Anderson,* 477 U.S. at 251–52). The nonmoving party may not rely on "mere conclusions and allegations" to create a genuinely disputed issue of material fact. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d 309, 320 (7th Cir. 2003). "To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Life Plans, Inc. v. Security Life of Denver Ins. Co.,* 800 F.3d 343, 349 (7th Cir. 2015); *see also Celotex,* 477 U.S. at 322–23.

For this reason, the Seventh Circuit refers to summary judgment as the "put up or shut up" moment in a lawsuit. *Porter v. City of Chicago,* 700 F.3d 944, 956 (7th Cir. 2012) ("We often call summary judgment the 'put up or shut up' moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case"), citing *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). Thus, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327. Ultimately, summary

judgment is appropriate where – as here – "no reasonable jury could rule in favor of the nonmoving party." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016), *citing Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014).

### III. ARGUMENT

Plaintiff has alleged claims pursuant to 42 U.S.C. § 1981 for "discrimination," "hostile work environment," and "retaliation" based on his race, color, and national origin. (Dkt. 22, pp. 3-4; *see also*, SSUF ¶ 2). According to Plaintiff, his race is "American," his color is "black," and his national origin is "American." (SSUF, ¶ 30). It is well settled that "[t]he same standards governing liability under Title VII apply to § 1981 claims." *Hague v. Thompson Distribution Co.,* 436 F.3d 816, 822 (7th Cir. 2006); *Gonzalez v. Ingersoll Milling Mach. Co.,* 133 F.3d 1025, 1035 (7th Cir. 1998) (same). *See also, Bennett v. Roberts,* 295 F.3d 687, 697-98 (7th Cir. 2002) (district court correctly entered summary judgment on § 1981 claims because plaintiff was unable to prove allegations of disparate treatment under Title VII). As explained below, each of Plaintiff's claims fails as a matter of law.

### A. PLAINTIFF'S "DISCRIMINATION" CLAIM FAILS AS A MATTER OF LAW

Because there is no "direct evidence" of discrimination in this case, to survive summary judgment on his § 1981 discrimination claim Plaintiff must utilize the familiar *McDonnell Douglas* burden-shifting framework. *Oliver v. Joint Logistics Managers, Inc.,* 893 F.3d 408, 411-12 (7th Cir. 2018), citing *Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 765 (7th Cir. 2016), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under this framework, the plaintiff-employee must first establish a *prima facie* case of discrimination. *Oliver*, 893 F.3d at 412. The burden then shifts to the defendant-employer to offer "some legitimate, nondiscriminatory reason" for the adverse employment decision. *Id.* If the employer is able to do so, the plaintiff must show

the defendant's stated reason for the adverse employment decision is pretextual. *Id.*  Importantly, only the burden of production shifts to the defendant; at all times, the burden of persuasion remains solely with the plaintiff.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981); *Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715-16 (1983). [1]

As explained below, Plaintiff's § 1981 discrimination claim fails at the outset, and the burden-shifting framework collapses before it begins, because Plaintiff cannot state a *prima facie* case of discrimination.

### 1.  Plaintiff Cannot State a *Prima Facie* Case of Discrimination

To establish a *prima facie* case of employment discrimination, Plaintiff must present sufficient evidence to establish each of the following elements: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) "similarly situated employees who were not members of the plaintiff's protected class were treated more favorably."  *Oliver*, 893 F.3d 408, 412 (7th Cir. 2018), quoting *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000); *see also, Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 730 (7th Cir. 2011).  In this case, the undisputed material facts show Plaintiff is unable to establish either the second or fourth elements of a *prima facie* case.

#### a.  Plaintiff's failed criminal background check rendered him unqualified to remain employed at Mariano's.

Before his employment had even begun, Plaintiff knew that Mariano's would perform a background check as part of its regular employment practices. (SSUF, ¶¶ 4-10).  On January 26,

---

[1] As the Supreme Court recently made clear, a § 1981 claim requires "but-for causation" (in contrast to a Title VII claim, which requires only that race be a "motivating factor").  *Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020).  Thus, to survive summary judgment, Plaintiff must "ultimately prove that, but for race [or color], [he] would not have suffered the loss of a legally protected right." *Id.  See also*, *Kilgore v. FedEx Freight*, 458 F. Supp. 3d 973, 978-79 (N.D. Ill. 2020) (question on summary judgment in § 1981 case is "whether the evidence as a whole would allow a reasonable jury to find that the plaintiff suffered an adverse job action because of his [race].").

2022, Plaintiff: (a) accepted his conditional offer of employment from Mariano's; (b) authorized the Company to perform a background check on him; and (c) elected to begin his employment pending completion of that background check, with the understanding that his employment could be terminated if the results of his background check were not satisfactory. (*Id.*, ¶¶ 8-9). With that understanding, Plaintiff began working at Mariano's on February 8, 2022. (*Id.*, ¶ 10).

Mariano's utilizes a third-party consumer reporting agency ("GIS - a HireRight Company") to perform authorized background checks on employees. (SSUF, ¶ 7). Mariano's submitted its request for Plaintiff's background check on January 31, 2022, and received the results from HireRight a month later, on February 28, 2022. (*Id.*, ¶¶ 11-12). Unfortunately, the results of Plaintiff's background check revealed that he was convicted of a crime involving dishonesty – specifically, the criminal offense of "Unlawful To Alter/Sell/Exchange Tokens, Transfers, Transaction Cards, Etc. Without Consent" – in August of 2018, for which he served time in jail. (*Id.*, ¶ 13). Mariano's followed its policies and procedures, and promptly sent Plaintiff written notice of the adverse background check results, along with a copy of the report it received from HireRight. (*Id.*, ¶¶ 14). As part of its notice, Mariano's expressly invited Plaintiff to dispute the information contained in his background check report, or provide any additional information that he wanted the Company to review. (*Id.*). [2]

Lindsay Flesher, the "Associate Relations Manager" in Mariano's human resources ("HR") department, reviewed Plaintiff's background check results. (SSUF, ¶¶ 17-18). Ms. Flesher concluded that Plaintiff's recent criminal conviction for a crime of dishonesty was inconsistent with Mariano's core values of "honesty" and "integrity," and decided that continuing his

---

[2] Plaintiff contends he never received a copy of Mariano's written notice until after his employment had been terminated. (SSUF, ¶¶ 15-16). Plaintiff concedes, however, that Mariano's sent the notice to his correct address. (*Id.*).

employment with the Company would present an unreasonable risk to property. (*Id.*, ¶¶ 19-20). Accordingly, and based solely on Plaintiff's criminal conviction history, Ms. Flesher made the decision to terminate his employment on March 15, 2022. (*Id.*, ¶¶ 20-22, ¶ 24, ¶ 29).

Because Plaintiff's criminal conviction history rendered him unqualified to remain employed at Mariano's, Plaintiff is unable to satisfy the second element of a *prima facie* case (i.e., that he was qualified for the position), and his discrimination claim fails as a matter of law.

### b. **Plaintiff cannot identify any similarly-situated comparators.**

Even if Plaintiff did not have a disqualifying criminal conviction record (and, he does), his discrimination claim nonetheless fails because he cannot identify any similarly-situated comparator employees who were treated more favorably than him. *See, Hutt v. AbbVie Prod. LLC,* 757 F.3d 687, 693 (7th Cir. 2014) (absent comparators, no inference of discrimination arises and plaintiff's disparate treatment claim fails); *see also, Diaz v. Kraft Foods Global, Inc.,* 653 F.3d 582, 590 (7th Cir. 2011) ("Absent a valid comparator, [plaintiff] cannot move past summary judgment under the indirect method of proof."); *McGowan v. Deere & Co.,* 581 F.3d 575, 580 (7th Cir. 2009) ("Because [the plaintiff] is unable to demonstrate that a similarly situated person not in the protected class was treated more favorably than he was, he cannot make out a *prima facie* case of racial discrimination."). To satisfy this burden, "a plaintiff must present ***specific*** evidence that employees who were treated better had the same qualifications; general allegations of better treatment will not suffice." *Stahl v. St. Anthony Medical Center of Crown Point, Inc.*, 103 Fed. App'x. 13, 17 (7th Cir. 2004) (emphasis original). [3]

---

[3] An employee is "similarly situated" to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their employer's treatment of them. *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017) ("Similarly situated employees must be directly comparable to the plaintiff in all material respects"). Relevant factors include "whether the employees (i) held the same job description,

*– Footnote Cont'd Next Page…*

In this case, Plaintiff admits he cannot identify any similarly-situated Mariano's employee whose criminal background check revealed a prior conviction involving a crime of dishonesty, but who was not terminated as a result. (SSUF, ¶ 54). In fact, the undisputed evidence shows precisely the opposite. Lindsay Flesher – the sole decision-maker with respect to Plaintiff's termination of employment – previously terminated several employees (each with a self-identified race, color, or national origin different than Plaintiff's) because their background checks revealed a criminal conviction history for various crimes of dishonesty. (*Id.,* ¶¶ 21, 31). More specifically:

- ▇▇▇▇▇▇▇▇▇▇, who self-identifies as "Two or more races," was convicted of a crime of dishonesty (retail theft); accordingly, Ms. Flesher terminated his employment on December 13, 2021. (SSUF, ¶¶ 37-41).

- ▇▇▇▇▇▇, who self-identifies as "Hispanic or Latino," was convicted of a crime of dishonesty (retail theft); accordingly, Ms. Flesher terminated her employment on December 16, 2021. (SSUF, ¶¶ 42-46).

- ▇▇▇▇▇▇▇▇, who self-identifies as "White," was convicted of a crime of dishonesty (robbery); accordingly, Ms. Flesher terminated her employment on December 27, 2021. (SSUF, ¶¶ 32-36).

- ▇▇▇▇▇▇, who self-identifies as "American Indian or Alaska Native," was convicted of a crime of dishonesty (forgery and theft of labor or services); accordingly, Ms. Flesher terminated his employment on January 15, 2022. (SSUF, ¶¶ 47-51).

Because Plaintiff can present no evidence to show he was treated any less favorably than any other Mariano's employee whose background check revealed a criminal conviction for a crime

---

(ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications." *David v. Board of Trustees of Community College Dist. No. 508*, 846 F.3d 216, 226 (7th Cir. 2017).

of dishonesty, he cannot state a *prima facie* case and his Section 1981 discrimination claim fails as a matter of law.

### 2. **Mariano's Legitimate, Non-Discriminatory Reason**

When an employee is unable to establish a *prima facie* case, "the employer may not be put to the burden of stating the reasons for his termination." *Hague,* 436 F.3d 816, 823 (7th Cir. 2006) (cleaned up); *see also, Bunn v. Khoury Enterprises, Inc.,* 753 F.3d 676, 685 (7th Cir. 2014) ("When an employee cannot make out a *prima facie* case, that is the end of it; summary judgment is warranted.").

Assuming, *arguendo*, that Plaintiff was able to state a *prima facie* case of discrimination (and he cannot), the burden would then shift to Mariano's to articulate a legitimate, non-discriminatory reason for its challenged employment decision. *Oliver*, 893 F.3d at 412. This burden is one of articulation – not proof – and it is "quite light," such that "the mere articulation of the reason rebuts the *prima facie* case and puts the onus back on the plaintiff to prove pretext." *Jones v. Union Pac. R. Co.,* 302 F.3d 735, 742 (7th Cir. 2002), citing *Pilditch v. Board of Educ.,* 3 F.3d 1113, 1117 (7th Cir. 1993); *see also, Flores v. Preferred Tech. Grp.,* 182 F.3d 512, 515 (7th Cir. 1999) (same).

The undisputed evidence in this case shows that: (a) Lindsay Flesher was the lone decision-maker with respect to the termination of Plaintiff's employment; (b) honesty and integrity are core values at Mariano's, and expected of every employee; (c) Ms. Flesher based her decision to terminate Plaintiff's employment solely on the fact that he had been convicted of a crime of dishonesty, which ran counter to the Company's core values; (d) Ms. Flesher did not consider any factor other than Plaintiff's recent criminal conviction history when making her decision to terminate his employment; and (e) neither Plaintiff's race, nor his color, nor his national origin

played any role whatsoever in Ms. Flesher's decision to terminate his employment at Mariano's. (SSUF, ¶¶ 19-21, ¶¶ 24-25, ¶ 27). Mariano's has met its burden of articulation under *McDonnell Douglas*.

### 3. There is NO Evidence of "Pretext"

Having articulated Mariano's legitimate, non-discriminatory reason for terminating Plaintiff's employment, the burden would shift back to him one last time, to show the Company's articulated rationale was really just "pretext" for unlawful discrimination. This is a high burden, and one Plaintiff cannot meet.

When attempting to show pretext, an employee "must ***specifically*** refute the facts which allegedly support the employer's proffered reasons." *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 845 (7th Cir. 1996) (emphasis original). An employee's subjective belief or speculation does not constitute evidence and is insufficient to prove pretext. *Murray v. Chicago Transit Authority,* 252 F.3d 880, 888 (7th Cir. 2001). Indeed, "[i]f the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed." *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 814 (7th Cir. 2022), citing *Yancick v. Hanna Steel Corp.,* 653 F.3d 532, 548 (7th Cir. 2011). A court's pretext analysis is limited in scope:

> [W]hen an employer articulates a plausible, legal reason for its action, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for its action. The federal courts are not a super-personnel department that second-guesses facially legitimate employer policies. It is not the role of the court to determine whether an employer's expectations were fair, prudent, or reasonable. So long as its management decision was not a guise for a discriminatory purpose, we must respect that decision.

*Boss v. Castro,* 816 F.3d 910, 917 (7th Cir. 2016) (internal citations omitted). [4]

---

[4] *See also, Grayson v. O'Neill,* 308 F.3d 808, 820 (7th Cir. 2002) ("[I]n determining whether an employer's

*– Footnote Cont'd Next Page…*

To establish pretext an employee "must show more than that the employer's decision was incorrect; the plaintiff must also show the employer lied about its proffered explanation." *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Smith v. Chicago Transit Auth.,* 806 F.3d 900, 905 (7th Cir. 2015)*; see also, Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015) (pretext means "a dishonest explanation, a lie rather than an oddity or an error").

Plaintiff can present no evidence of pretext. Indeed, Plaintiff admits that he does not know: (a) who at Mariano's made the decision to terminate his employment; (b) who was involved in the decision-making process; or (c) what factors were considered when making the decision to terminate his employment with the Company. (SSUF, ¶ 28). Contrary to the allegations in his Amended Complaint, the undisputed evidence shows Plaintiff's race, color and national origin played no role whatsoever in Mariano's decision to terminate his employment. (*Id.*, ¶ 27). Nor could those factors have played any role, because Lindsay Flesher – the sole decision-maker behind the termination – *was not aware of* Plaintiff's race, color or national origin when she made the decision to terminate his employment. (SSUF, ¶ 25). The first time Ms. Flesher knew anything about Plaintiff's self-identified race, color, or national origin was when she received the letter he wrote to "Kroger HR" *after* his employment had already been terminated. (*Id.*). [5]

---

proffered reason for an employment action was pretextual, [courts] are not concerned with the correctness or desirability of reasons offered for employment decisions, but rather the issue of whether the employer honestly believes in the reasons it offers."); *Stewart v. Henderson,* 207 F.3d 374, 378 (7th Cir.2000) (court's role is solely to assess whether the justifications given are honest, not whether the employment decision was accurate, wise or well considered); *Jordan v. Summers,* 205 F.3d 337, 344 (7th Cir. 2000) ("Discrimination laws serve only to prevent consideration of forbidden characteristics – like race – but they are not, as we have repeatedly noted, court-enforced merit selection programs.")

[5] Moreover, the fact that Ms. Flesher terminated the employment of at least four other employees for the exact same reason – an adverse criminal background check, reflecting a conviction for a crime of dishonesty – belies any possibility of pretext in this case. (SSUF, ¶¶ 31-53).

### B. PLAINTIFF'S "HOSTILE WORK ENVIRONMENT" CLAIM FAILS

Plaintiff's § 1981 hostile work environment claim, like his discrimination claim, is evaluated under the same legal framework as a hostile work environment claim under Title VII. *Yancick.,* 653 F.3d 532, 544 (7th Cir. 2011). To survive summary judgment on a § 1981 hostile work environment claim, Plaintiff must present evidence sufficient for a reasonable jury to find that: (1) his work environment was both objectively and subjectively offensive; (2) the harassment was based on his race; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability. *Paschall,* 28 F.4th 805, 813-14 (7th Cir. 2022), citing *Cole v. Board of Trustees of Northern Illinois University,* 838 F.3d 888, 895-96 (7th Cir. 2016); *see also, Vance v. Ball State Univ.,* 646 F.3d 461, 469 (7th Cir. 2011). Courts "should not find a hostile work environment for mere offensive conduct that is isolated, does not interfere with the plaintiff's work performance, and is not physically threatening or humiliating." *Yancick*, 653 F.3d at 544. In this case, Plaintiff cannot satisfy either the third or fourth elements of a § 1981 hostile work environment claim.

### 1. The Allegedly Harassing Conduct was Neither "Severe" nor "Pervasive"

A hostile work environment claim will not arise unless "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "This is a demanding standard; a plaintiff's evidence must go well beyond showing rudeness or incivility…, even if it need not reach the point of 'hellishness.'" *Demkovich v. St. Andrew the Apostle Parish,* 973 F.3d 718, 728 (7th Cir. 2020). In determining whether the alleged conduct is sufficiently severe or pervasive to be actionable, courts examine the "totality of the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance." *Alamo v. Bliss*, 864 F.3d 541, 549-50 (7th Cir. 2017).

When evaluating the totality of circumstances, "the court must bear in mind that Title VII does not impose a 'general civility code' and that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Saxton v. Wolf*, 508 F. Supp. 3d 299, 310 (N.D. Ill. 2020). Accordingly, "employers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018).

In this case, Plaintiff alleges that Crystal Brandon, the PSM at Store No. 512, made a single lewd comment about him on his first day of work. (SSUF, ¶ 56). [6] Plaintiff also complains that he was the subject of non-specific "gossip" regarding his national origin (and whether he used drugs or alcohol), that he supposedly heard from customers and employees, whom he was unable to identify. (*Id.*, ¶¶ 57-58). Neither of these incidents were "severe" or "pervasive" – either subjectively or objectively – to create a hostile work environment.

### a. The single lewd comment (overheard by Plaintiff, which he ascribes to Crystal Brandon) was neither severe nor pervasive.

Regarding the lewd comment, Plaintiff testified that he overheard Ms. Brandon say to another employee, "We have a new hire. His name is Brandon Kimble. Beautiful skin. I would fuck him. I wonder if he got a big dick or not. And he is working in the meat/deli department."

---

[6] The People Services Manager, or "PSM," is a store-level human resources professional. (SSUF, ¶ 22)  In this case, Crystal Brandon was the PSM at Store No. 512. (*Id.*).  Ms. Brandon played no role whatsoever in the decision to terminate Plaintiff's employment, and did not participate in any aspect of the decision-making process. (*Id.*, ¶ 23).  Ms. Brandon's role as PSM was strictly limited to informing Plaintiff of the termination decision that Lindsay Flesher, the Company's Associate Relations Manager, had made. (*Id.*, ¶ 17, ¶¶ 22-23).

(SSUF, ¶ 55). This comment was certainly not pervasive – it happened **only once**, on his first day of work. (*Id.*, ¶ 56). And "the one-time use of a racial epithet is not severe enough to trigger liability." *Nichols v. Mich. City Plant Planning Department*, 755 F.3d 594, 601 (7th Cir. 2014). [7]

Nor was the comment "severe" – it did not interfere with Plaintiff's job performance in any respect. The single comment happened on his first day of work, and he managed to work at Store No. 512 for nearly two months without incident. (SSUF, ¶ 29, ¶ 56). Indeed, Plaintiff never bothered to mention Ms. Brandon's alleged comment until after his employment had already been terminated. (*Id.*, ¶ 68). And Plaintiff mentioned nothing about the incident or **any** conduct at Store No. 512 – other than that "his employment was terminated…for an alleged violation of company policy" – in his Union grievance. (*Id.*, ¶ 71). This is manifestly insufficient to sustain a hostile work environment claim. *See, e.g., Zegarra v. John Crane, Inc.,* 218 F. Supp. 3d 655, 668 (N.D. Ill. 2016) (no hostile work environment where harassment did not interfere with plaintiff's employment, noting "[his] duties and position remained the same; he was not demoted or suspended; he did not complain to human resources," and "remained on the job without incident until his termination."). This was precisely the type of "offhand comment" and "isolated incident" that courts recognize "do[es] not rise to the level of conduct that alters the terms and conditions of employment." *Passananti v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012). [8]

---

[7] *See also, Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 648-49 (7th Cir. 2011) (two incidents of employee wearing confederate flag, and single offensive statement about inmate being "black as coal" insufficient to create hostile work environment); *Dandy v. United Parcel Serv., Inc.,* 388 F.3d 263, 271-72 (7th Cir. 2004) (unambiguously racial and offensive epithets did not create hostile work environment, given that epithets were used only once); *Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 552 (7th Cir. 2002) (handful of offensive comments not sufficient to sustain hostile work environment claim); *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 534 (7th Cir. 1993) (two instances of harassment not pervasive).

[8] While comments about a person's genitals and speculation about sexual congress are certainly offensive and have no place in the workforce, conduct that is far more explicit and "boorish" than what Plaintiff ascribes to Ms. Brandon has been found insufficient to create a hostile work environment. *See, e.g., Mercer v. Cook Cty., Ill.,* 527 F. App'x 515, 521 (7th Cir. 2013) (co-worker's comments "oh, bitch" and "go play

*– Footnote Cont'd Next Page…*

### b. Non-specific "gossip" about Plaintiff's national origin cannot sustain a "hostile work environment" claim under § 1981.

Nor can the non-specific "rumors" about Plaintiff's national origin give rise to a hostile work environment claim. *See, e.g., Jansen v. Packaging Corp. of Am.,* 123 F.3d 490, 549 (7th Cir.1997) (evidence of gossip amongst one's co-workers, in and of itself, is insufficient to establish hostile work environment claim); *see also, Moriarty v. Dyson, Inc.,* 2012 WL 5389684, at *5 (N.D. Ill. Oct. 30, 2012) (rumors and gossip, viewed objectively, do not constitute hostile work environment); *Finnane v. Pentel of America, Ltd.,* 2000 WL 288437, at *8 (N.D. Ill. Mar. 14, 2000) (unspecific workplace "gossip and joke telling" is not tangible employment action). In this case, Plaintiff learned about these rumors from three customers (whom he could not identify) and employees who worked in other departments at Store No. 512 (whose names he also could not remember). (SSUF, ¶ 58). Nor was Plaintiff able to describe the specific content of the "gossip," other than generally stating that it had to do with his national origin and use of drugs or alcohol. (*Id.*, ¶ 57). None of this conduct rises to the level of harassment sufficient to sustain a "hostile work environment" claim under § 1981.

### 2. There is No Basis to Impose Liability on Mariano's.

Even if the conduct alleged by Plaintiff was both objectively and subjectively "severe" and "pervasive" (and it was not), the *Faragher-Ellerth* defense would bar any claims against Mariano's. An employer can only be liable for "hostile work environment" harassment under certain circumstances, depending upon whether: (a) the alleged harasser is the employee's

---

with yourself," while offensive, were "neither severe nor pervasive enough to create an objectively hostile work environment."); *Scruggs v. Garst Seed Co.,* 587 F.3d 832, 841 (7th Cir. 2009) (supervisor's comments that plaintiff was "made for the back seat of a car" and looked like a "dyke," while offensive, were not objectively severe or pervasive to create a hostile work environment); *Patt v. Family Health Sys., Inc.,* 280 F.3d 749, 754 (7th Cir. 2002) (eight gender-related comments during course of employment, including "the only valuable thing to a woman is that she has breasts and a vagina," was insufficient to show hostile work environment).

supervisor, and (b) whether the harasser took a tangible employment action against the employee. If the alleged harasser is a co-worker (as opposed to a supervisor), "a negligence standard applies. To satisfy that standard, the complainant must show that the employer knew or should have known of the offensive conduct but failed to take appropriate corrective action." *Vance v. Ball State Univ.*, 570 U.S. 421, 453-54 (2013). [9]

The *Faragher-Ellerth* defense allows an employer to "avoid liability by showing (1) that it exercised reasonable care to prevent and promptly correct any harassing behavior and (2) that the [employee] unreasonably failed to take advantage of any preventive or corrective opportunities that were provided." *Id.* at 430 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)). The undisputed evidence shows both elements are present in this case.

### a. Mariano's exercised reasonable care to prevent (and promptly correct) any workplace discrimination and harassment

An employer that maintains and distributes to its employees appropriate anti-harassment policies with an effective complaint procedure generally satisfies its duty of "reasonable care" under the *Faragher-Ellerth* defense. *Shaw v. AutoZone, Inc.,* 180 F.3d 806, 812 (7th Cir.1999) (finding that the "undisputed fact[]" that AutoZone adopted a detailed anti-harassment policy and distributed it to its employees "established, as a matter of law, that AutoZone exercised reasonable care to prevent sexual harassment"). *See also, McPherson v. City of Waukegan,* 379 F.3d 430, 442 (7th Cir. 2004) (employer exercised reasonable care by maintaining and disseminating to its employees corporate policies and procedures for addressing and preventing harassment; burden

---

[9] An employee is considered a "supervisor" if she "is empowered by the employer to take tangible employment actions against the victim." *Id.* at 424. In this case, Ms. Brandon never had any supervisory authority over Plaintiff; she had no authority or ability to discipline, suspend, terminate, promote, demote, increase or decrease the rate of pay, or take any other tangible employment action against Plaintiff. (SSUF, ¶ 60). Plaintiff does not – and cannot – contend otherwise. (*Id.*, ¶ 59).

was on employee to avail herself of those policies and procedures).  For example, the employer in *Hill v. American General Finance, Inc.,* was found to have exercised reasonable care by maintaining a company policy against sexual harassment in the workplace.  218 F.3d at 643-644 (7th Cir. 2000)  The employer's sexual harassment policy stated the company's goal of "maintain[ing] a work environment free of sexual harassment," and included a comprehensive definition of harassment: "conduct has the purpose or effect of substantially interfering with an individual's work performance or creating a work environment that is reasonably perceived by the individual to be intimidating, hostile, or offensive." (*Id.*, at 644).  The employer maintained a complaint procedure, which provided multiple reporting avenues, including the employee's immediate supervisor or manager, members of the company's human resources department, and a reporting hotline. (*Id.*). Copies of these policies were maintained in each branch office, and accessible to all employees. (*Id.*).

Mariano's exercised reasonable care – even more so than the employers in *Hill*, *McPherson* and *Shaw* – to prevent and promptly correct any workplace discrimination and harassment. Mariano's maintained a robust, written policy against sexual and other workplace harassment (the "anti-harassment policy" or "policy"), which is clearly set forth in the Company's Employee Handbook, a copy of which is provided to and made available to every newly-hired employee – including Plaintiff. (SSUF, ¶ 62).  Mariano's anti-harassment policy provides a clear definition of unlawful harassment – which expressly includes harassment based on someone's race or national origin – along with specific examples of unacceptable workplace conduct. (*Id.*, ¶ 63).

Mariano's policy further mandates that employees have an obligation to immediately report any type of misconduct, and advises that the Company will promptly investigate all reports of harassment and other discrimination. (SSUF, ¶ 64).  In order to further promote and encourage the

16

reporting of workplace misconduct, the Company's policy includes a multi-faceted "reporting and investigation procedure," which provides several different reporting options for an employee who believes they have experienced workplace harassment, including reporting the incident to the Company's HR Department, or any corporate executive of their choosing – or even anonymously through the Company's toll-free ethics hotline. (*Id.*, ¶ 65). Mariano's policy also mandates the immediate investigation of complaints, and ensures that "swift and appropriate" remedial measures will be taken, including disciplinary action up to and including discharge. (*Id.*, ¶ 66). Finally, Mariano's expressly prohibits retaliation against any employee who makes a complaint or participates in the investigation of one. (*Id.*, ¶ 67).[10]

By maintaining a robust and effective anti-harassment policy, and disseminating that policy to all employees upon the start of their employment, Mariano's exercised reasonable care to prevent (and promptly correct) any workplace discrimination and harassment.

### b. Plaintiff unreasonably failed to take advantage of the multiple preventative and corrective opportunities provided by Mariano's

An employer's duty to investigate and, if appropriate, take remedial measures is not activated until the employee complains of harassment. *See e.g., Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1035 (7th Cir. 1998); *Perry v. Harris Chernin, Inc.,* 126 F.3d 1010 (7th Cir.1997). Thus, an employer is not liable for harassment when a mechanism to report the harassment exists, but the victim fails to utilize it. *Durkin vs. City of Chicago*, 341 F.3d 606 (7th Cir. 2003).

Plaintiff admits he received, was familiar with, and understood the contents of the Company's Employee Handbook, including its anti-harassment policy. (SSUF, ¶ 62, ¶ 68).

---

[10] Mariano's anti-harassment policy is effective, as evidenced by the Company's immediate and thorough investigation of the allegations made in Plaintiff's post-employment demand letter. (SSUF, ¶ 69).

Despite his familiarity with these policies and the multiple reporting avenues available to him, and notwithstanding his obligation to report any workplace harassment or discrimination that he may have experienced, Plaintiff never complained about or reported any of the workplace harassment he now claims to have experienced at Store No. 512, until *after* his employment had already been terminated. (*Id.*, ¶ 68).

Whatever concern or discomfort Plaintiff might have felt about reporting the supposed harassment he experienced, it cannot excuse his failure to utilize *any* of Mariano's multiple complaint mechanisms. *See, Shaw,* 180 F.3d at 813 ("[W]e conclude that an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment."). Plaintiff's failure to take advantage of the numerous preventative and corrective opportunities provided by Mariano's was manifestly unreasonable, and he should fare no better than the employees in *Hill, McPherson* and *Shaw*. The Court should grant summary judgment in favor of Mariano's on Plaintiff's § 1981 hostile work environment claim.

### C. PLAINTIFF'S "RETALIATION" CLAIM FAILS AS A MATTER OF LAW

Just like his discrimination and hostile work environment claims, Plaintiff's § 1981 retaliation claim is governed by the same standards as a Title VII retaliation claim. *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009); *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 403-04 (7th Cir. 2007). Thus, to prevail on his retaliation claim, Plaintiff must prove that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Lewis v. Wilkie,* 909 F.3d 858, 866 (7th Cir. 2018). Regardless of which method of proof Plaintiff employs – direct or indirect – he cannot satisfy either the first or last elements, and his retaliation claim fails as a matter of law.

### 1. **Plaintiff Did Not Engage in "Protected Activity"**

Plaintiff believes Mariano's terminated his employment in retaliation for his (alleged) request for a promotion. (SSUF ¶ 72). But there are only two types of activities that can give rise to a retaliation claim: "An employee engages in a protected activity by either: (1) filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII or other employment statutes; or (2) opposing an unlawful employment practice." *Alley v. Penguin Random House,* 62 F.4th 358, 362 (7th Cir. 2023), citing *Northington v. H & M International*, 712 F.3d 1062, 1065 (7th Cir. 2013). As a matter of law, Plaintiff's supposed request for a promotion does not constitute "protected activity" upon which a § 1981 retaliation claim could be based. [11]

### 2. **There was No "Causal Nexus" between Plaintiff's (Alleged) Promotion Request and the Termination of his Employment**

Plaintiff's retaliation claim also fails because he cannot establish a "causal nexus" between his alleged request for a promotion and the termination of his employment. In order to establish a causal connection, the "key inquiry" is whether the decision-maker was aware of the plaintiff's protected activity; "absent such knowledge, there can be no causal link between the two." *Luckie v. Ameritech Corp.,* 389 F.3d 708, 715 (7th Cir. 2004); *see also, Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668-669 (7th Cir. 2006) (employment retaliation claim "presupposes that the decision-maker knew that the plaintiff engaged in a statutorily protected activity"). This requires

---

[11] The undisputed evidence shows Mariano's has no record of Plaintiff ever seeking a promotion. (SSUF, ¶¶ 75-76). But even if Plaintiff actually wanted to move from a "Level 3" team member to a "Level 4" team member, he would have first been required to become "cross-trained" and certified as a Level 3 team member in another department. (*Id.*, ¶ 75). And it is undisputed that Plaintiff never worked in any department other than the meat department at Store No. 512. (*Id.*, ¶ 73). But even if Plaintiff had cross-trained and become certified as a Level 3 team member in another department, he would not have been eligible for a promotion in the meat department unless-and-until a Level 4 position became available in that department. (*Id.*, ¶ 77). And it is undisputed that the meat department at Store No. 512 never had an open Level 4 position in the meat department at any time during the tenure of Plaintiff's employment. (*Id.*, ¶ 78).

a showing of ***actual knowledge*** on the part of the decision-maker; "[i]t is not sufficient that an employer could or even should have known about an employee's complaint; the employer must have had actual knowledge of the [protected activity] for its decisions to be retaliatory." *Tomanovich,* 457 F.3d at 668; *see also, Salas v. Wisconsin Department of Corrections,* 493 F.3d 913, 924 (7th Cir. 2007) (plaintiff required to show employer had actual knowledge – not merely that employer "could have or should have known about" protected activity – to sustain a claim for retaliation); *Miller v. American Family Mutual Insurance Co.,* 203 F.3d 997, 1007-08 (7th Cir. 2000) (employer cannot retaliate when it is unaware of protected activity); *Dey v. Colt Const. & Dev. Co.,* 28 F.3d 1446, 1458 (7th Cir. 1994) ("there generally can be no causal link between protected activity and an adverse employment action if the employer remained unaware of the protected activity.")  Indeed, absent a showing of actual knowledge by the decision-maker, an employee could never establish the necessary "but-for causation" required to proceed with a retaliation claim.  *Univ. of Texas Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 360 (2013).

In this case, the evidence is undisputed that Lindsay Flesher – the sole decision-maker  – was unaware of Plaintiff's supposed request for a promotion when she made the decision to terminate his employment.  (SSUF, ¶ 26, ¶ 79).  Ms. Flesher did not learn about Plaintiff's allegations concerning a requested promotion or certification until he wrote to the Company's HR Department ***after*** his employment had already been terminated. (*Id*).  Consequently, Plaintiff cannot establish a causal nexus, and his § 1981 retaliation claim fails as a matter of law.

## V. CONCLUSION

Plaintiff cannot meet his evidentiary burden to show Mariano's discriminated against him because of his race, color, national origin, or any other reason.  Nor did the single, isolated incident of boorish behavior (even coupled with the non-specific "gossip" by persons Plaintiff could not

identify) create a hostile work environment for him. Nor can Plaintiff show that Mariano's retaliated against him for supposedly requesting a promotion. Taken as a whole, the undisputed material facts in this case can lead to but one result: summary judgment in favor of Mariano's on all claims asserted in Plaintiff's Amended Complaint.

Dated: April 28, 2023                    Respectfully submitted,

                                         **ROUNDY'S ILLINOIS, LLC, d/b/a**
                                         **MARIANO'S, Defendant**

                                         By: */s/ Christopher S. Griesmeyer*
                                             One of Its Attorneys

                                             Christopher S. Griesmeyer (ARDC No. 6269851)
                                             GREIMAN, ROME & GRIESMEYER, LLC
                                             205 West Randolph Street, Suite 2300
                                             Chicago, Illinois 60606
                                             Telephone: (312) 428-2750
                                             Facsimile: (312) 332-2781
                                             cgriesmeyer@grglegal.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 28, 2023, a copy of the foregoing ***Memorandum of Law in Support of Defendant's Motion for Summary Judgment*** was filed with the Court's CM/ECF system, which will provide notice to all parties registered to receive notices. I further certify that a copy of the foregoing has been sent to the Plaintiff at the addresses listed below via U.S. Mail, before the hour of 5:00 pm, on April 28, 2023:

|  |  |  |
|---|---|---|
| Brandon Rudolph-Kimble<br>211 East Delaware Place<br>Unit No. 206<br>Chicago, Illinois 60611 | & | Brandon Rudolph-Kimble<br>1600 N. Milwaukee Ave.<br>Vernon Hills, Illinois 60061 |

 */s/  Christopher S. Griesmeyer*
Christopher S. Griesmeyer (ARDC No. 6269851)
GREIMAN, ROME & GRIESMEYER, LLC
205 West Randolph St., Ste. 2300
Chicago, Illinois  60606
Telephone: (312) 428-2750
Facsimile: (312) 332-2781
cgriesmeyer@grglegal.com